UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTINE A. SMITH, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>MFS INVESTMENT MANAGEMENT, MASSACHUSETTS FINANCIAL SERVICES CO. and MFS FUND DISTRIBUTORS, INC.,<br><br>     Defendants. | Civil Action No. 1:08-cv-11942-GAO |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE CLASS ACTION COMPLAINT

James S. Dittmar BBO # 126320
Katherine G. McKenney BBO # 660621
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA  02109
Telephone:  (617) 570-1000

Michael K. Isenman (*pro hac vice*)
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC  20001
Telephone:  (202) 346-4000

**Attorneys for Defendants Massachusetts Financial Services Company and MFS Fund Distributors, Inc.**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF THE CASE....................................................................................2
    A.    The Plaintiff ................................................................................2
    B.    The Defendants .........................................................................3
    C.    The MFS Funds..........................................................................3
    D.    Compensation of Intermediaries ................................................3
    E.    The Putative Class......................................................................4
    F.    The Prospectuses at the Time of Ms. Smith's Investments ................4
    G.    Regulation of Mutual Fund Prospectuses ..................................4
    H.    The Alleged Omissions and Misrepresentations...........................5

I.    **Ms. Smith Lacks Standing.** ...................................................................7
    A.    Ms. Smith Lacks Standing With Respect To Funds In Which She Did Not Invest....................................................................................8
    B.    Ms. Smith Lacks Standing With Respect To Claims Relating To The Two Funds' Class A Shares That She Purchased. ..........................9

II.    **The Complaint Fails To Plead Securities Fraud.** ...............................10
    A.    The Complaint Identifies Nothing Fraudulent in Ms. Smith's Own Funds' Prospectuses.......................................................................11
    B.    MFS Had No Duty To Disclose Allegedly Omitted Information..........11
        1.    MFS had no duty to disclose relative account values. ............ 12
        2.    MFS had no duty to disclose broker-dealer compensation...... 18
    C.    Any Alleged Omission or Misrepresentation Was Immaterial...........20
        1.    Relative account values are not material because they do not add information to what is already available in the prospectus....... 20
        2.    Broker-dealer compensation information was not material because the Funds' prospectuses disclosed broker-dealer interest and because Ms. Smith pleads no reliance upon any broker-dealer's advice. ................................................................................ 21
        3.    The alleged inaccuracies in certain "performance tables" were not material to Ms. Smith................................................................. 22
    D.    The Complaint Fails To Allege Scienter. ...................................23
        1.    Motive and opportunity, without more, do not support a strong inference of scienter................................................................. 24
        2.    The "Additional Scienter Allegations" do not plead scienter.................. 26
        3.    Allegations of motive and opportunity are outweighed by strong, opposing inferences of non-fraudulent intent. ......................... 26
    E.    The Complaint Fails To Plead Reliance. .....................................28
    F.    The Complaint Fails To Plead Loss Causation...............................30
        1.    The complaint fails to plead loss causation because Ms. Smith's alleged loss is based only on comparative hypothetical returns. .............. 31
        2.    Speculative losses are not recoverable..................................... 32

**III.**    **The Complaint Is Time-Barred.** ....................................................................**33**

      A.    Ms. Smith Was On Inquiry Notice Of The Relative Account Values And
Total Returns Of Class A Shares Compared With B And C Shares.....................33

      B.    Ms. Smith Had Actual Knowledge, Or, At A Minimum, Inquiry Notice,
Of The Alleged Broker Conflicts Of Interest. ......................................................34

**CONCLUSION** ........................................................................................................................**35**

# TABLE OF AUTHORITIES

CASES

*Abelson v. Strong*, 644 F. Supp. 524 (D. Mass. 1986)...................................................................29

*ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46 (1st Cir. 2008)................................................11

*Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972).........................................29

*Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002).....................................................23, 24

*Allen v. Wright*, 468 U.S. 737 (1984) ..............................................................................................7

*Aulson v. Blanchard*, 83 F.3d 1 (1st Cir. 1996) ..............................................................................6

*Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990)..............................................................14

*Basic Inc. v. Levinson*, 485 U.S. 224 (1988) ...........................................................................20, 21

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).................................................................6, 7

*Benzon v. Morgan Stanley Distribs.*, 420 F.3d 598 (6th Cir. 2005) .......................................20, 21

*Binder v. Long Island Lighting Co.*, 847 F. Supp. 1007 (E.D.N.Y. 1994), *modified on
    other grounds*, 57 F.3d 193 (2d Cir. 1995)............................................................................10

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) .............................................9, 31

*Buck v. Am. Airlines, Inc.*, 476 F.3d 29 (1st Cir. 2007)..................................................................6

*Castillo v. Dean Witter Discover & Co.*, No. 97-1272 (RPP), 1998 WL 342050 (S.D.N.Y.
    June 25, 1998)..........................................................................................................................25

*Clark v. Nevis Capital Mgmt., Inc.*, No. 04-2702 (RWS), 2005 WL 488641 (S.D.N.Y.
    Mar. 2, 2005)............................................................................................................................29

*Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618 (4th Cir. 2008)...........................................23, 26

*DeBenedictis v. Merrill Lynch & Co.*, 492 F.3d 209 (3d Cir. 2007) ...............................20, 34, 35

*DeBruyne v. Equitable Life Assurance Soc'y of the U.S.*, 920 F.2d 457 (7th Cir. 1990) .............33

*Dodds v. Cigna Sec., Inc.*, 12 F.3d 346 (2d Cir. 1993).................................................................33

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005)..................................................11, 20, 30, 32

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976).......................................................................23

*Ezra Charitable Trust v. Tyco Int'l, Ltd.*, 466 F.3d 1 (1st Cir. 2006).............................................24

*Fitzgerald v. Citigroup Inc.*, No. 03-4305 DAB, 2007 WL 582965 (S.D.N.Y. Feb. 23, 2007) ..............................................................................................................................34, 35

*Flast v. Cohen*, 392 U.S. 83 (1968) .................................................................................................7

*Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100 (D. Mass. 2006) ...................................7, 8, 10

*Garvey v. Arkoosh*, 354 F. Supp. 2d 73 (D. Mass. 2005) .............................................................28

*Geffon v. Micrion Corp.*, 249 F.3d 29 (1st Cir. 2001) ..................................................................25

*Geiger v. Solomon-Page Group, Ltd.*, 933 F. Supp. 1180 (S.D.N.Y. 1996) ................................20

*Gorsey v. I.M. Simon & Co.*, No. 86-1875-Z, 1990 WL 61966 (D. Mass. Mar. 6, 1990).............29

*Greebel v. FTP Software, Inc.*, 194 F.3d 185 (1st Cir. 1999)...............................................6, 23, 24

*Gross v. Summa Four, Inc.*, 93 F.3d 987 (1st Cir. 1996)................................................................28

*Hoffman v. UBS-AG*, No. 05-6817 (LBS), 2008 WL 4684168 (S.D.N.Y. Oct. 22, 2008).............8

*I. Meyer Pincus & Assocs. v. Oppenheimer & Co.*, 936 F.2d 759 (2d Cir. 1991).........................15

*In re AIG Advisor Group Sec. Litig.*, No. 06-1625 (JG), 2007 WL 1213395 (E.D.N.Y. Apr. 25, 2007)....................................................................................................................8, 22

*In re Alkermes Sec. Litig.*, No. 03-12091-RCL, 2005 WL 2848341 (D. Mass. Oct. 6, 2005) ...............................................................................................................................29

*In re Boston Tech., Inc.*, 8 F. Supp. 2d 43 (D. Mass. 1998) .........................................................24

*In re Cabletron Systems, Inc.*, 311 F.3d 11 (1st Cir. 2002) ..........................................................25

*In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240 (8th Cir. 2008) ....................................................28

*In re Computervision Corp. Sec. Litig.*, 869 F. Supp. 56 (D. Mass. 1994)....................................15

*In re Credit Suisse First Boston Corp.*, 431 F.3d 36 (1st Cir. 2005)..............................................25

*In re Credit Suisse First Boston Corp.*, No. 02-12056-GAO, 2005 WL 852455 (D. Mass. Mar. 31, 2005)..........................................................................................................24, 25

*In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38 (D. Mass. 2003) ...................................7, 8, 25

*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03-8208 (RO), 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006)....................................................................................20, 27, 31, 32

*In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309 (8th Cir. 1997).........................................29, 30

*In re Parametric Tech. Corp. Sec. Litig.*, 300 F. Supp. 2d 206 (D. Mass. 2001) ...................23, 28

*In re Polaroid Corp. Sec. Litig.*, 134 F. Supp. 2d 176 (D. Mass. 2001).................................31, 33

*In re Salomon Smith Barney Mut. Fund Fees Litig.*
    441 F. Supp. 2d 579 (S.D.N.Y. 2006)..........................................................................8, 31, 32

*In re Smith Barney Fund Transfer Agent Litig.*, No. 05-7583 (WHP), 2007 WL 2809600 (S.D.N.Y. Sept. 26, 2007).......................................................................................................22

*In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1174 (N.D. Cal. 2004) .............29, 30

*Key Equity Investors, Inc. v. Sel-Lab Mkt., Inc.*, 246 F. App'x 780 (3d Cir. 2007) ....................25

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005).....................................................29

*Lewis v. Casey*, 518 U.S. 343 (1996)..........................................................................................10

*Maldonado v. Dominguez*, 137 F.3d 1 (1st Cir. 1998) ................................................................23

*Miller v. Fed. Land Bank of Spokane*, 587 F.2d 415 (9th Cir. 1978) ...........................................10

*Nenni v. Dean Witter Reynolds, Inc.*, No. 98-12454-REK, 1999 WL 34801540 (D. Mass. Sept. 29, 1999) ...........................................................................................................8, 9

*O'Shea v. Littleton*, 414 U.S. 488 (1974) ....................................................................................10

*Raines v. Byrd*, 521 U.S. 811 (1997) ...........................................................................................7

*Roeder v. Alpha Indus., Inc.*, 814 F.2d 22 (1st Cir. 1987)...........................................................12

*SEC v. Tambone*, 550 F.3d 106 (1st Cir. 2008) ..........................................................................20

*Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357 (1st Cir. 1994)...................................23, 24

*Shah v. Meeker*, 435 F.3d 244 (2d Cir. 2006)..............................................................................33

*Shaw v. Digital Equip. Corp.*, 82 F.3d 1194......................................................................6, 7, 12

*Shivangi v. Dean Witter Reynolds, Inc.*, 637 F. Supp. 1001 (S.D. Miss. 1986) ...........................26

*Siemers v. Wells Fargo & Co.*, No. 05-04518 WHA , 2006 WL 2355411 (N.D. Cal. Aug. 14, 2006...................................................................................................................................22

*Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) ...................................................10

*Stegall v. Ladner*, 394 F. Supp. 2d 358 (D. Mass. 2005) ................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499 (2007) ...............6, 26

*Warth v. Seldin*, 422 U.S. 490 (1975) ..........................................................................................10

*White v. Melton*, 757 F. Supp. 267 (S.D.N.Y. 1991) ....................................................................19

*Wolf v. Frank*, 477 F.2d 467 (5th Cir. 1973) ...............................................................................32

## CONSTITUTIONS AND STATUTES

U.S. Const. Art. III, § 2 ..............................................................................................................7, 9

Investment Company Act of 1940

    15 U.S.C. § 80a-1, et seq ..........................................................................................................8

Judicial Improvements Act of 1990, as amended by Sarbanes-Oxley Act of 2002

    28 U.S.C. § 1658 ....................................................................................................................33

Securities Act of 1933

    § 10(a)(3), 15 U.S.C. § 77j(a)(3) .............................................................................................3

Securities Exchange Act of 1934

    § 10(b), 15 U.S.C. § 78j(b) ...........................................................................................*passim*
    § 21D(a)(2), 15 U.S.C. § 78u-4(a)(2) .......................................................................................2
    § 21D(b)(1), 15 U.S.C. § 78u-4(b)(1) .......................................................................................6
    § 21D(b)(2), 15 U.S.C. § 78u-4(b)(2) ................................................................................6, 23
    § 21D(b)(4), 15 U.S.C. § 78u-4(b)(4) .....................................................................................30

## RULES AND REGULATIONS

FED. R. CIV. P. Rule 9(b) .......................................................................................................6, 11, 29

FED. R. CIV. P. 12(b)(6) ...................................................................................................................6

FED. R. EVID. 201 ..........................................................................................................................10

Rule 10b-5, promulgated under the Securities Exchange Act of 1934,
    17 C.F.R. § 240.10b-5 ....................................................................................................... 12, 33


## REGULATORY RELEASES

Registration Form Used by Open-End Management Investment Companies; Guidelines,
    Securities Act Release No. 6479, Investment Company Act Release No. 13436 (Aug.
    12, 1983), 48 Fed. Reg. 37928 (Aug. 22, 1983) ..................................................................... 14

Consolidated Disclosure of Mutual Fund Expenses, Securities Act Release No. 6752,
    Investment Company Release No. 16244 (Feb. 1, 1988), 53 Fed. Reg. 3192 (Feb. 4,
    1988) ....................................................................................................................................... 13

Exemption for Open-End Management Investment Companies Issuing Multiple Classes
    Shares; Disclosure by Multiple Class and Master Feeder Funds; Voting on
    Distribution of Plans, Securities Act Release No. 7143, Investment Company Act
    Release No. 20915 (Feb. 23, 1995), 60 Fed. Reg. 11876 (Mar. 2, 1995) .......................... 13, 14

Registration Form Used by Open-End Management Investment Companies; New
    Disclosure Option for Open-End Management Investment Companies, Securities Act
    Release No. 7512, Investment Company Act Release No. 2304 (Mar. 13, 1998), 63
    Fed. Reg. 13916 (Mar. 23, 1998) ........................................................................................... 14

Enhanced Disclosure and New Prospectus Delivery Option for Registered Open-End
    Management Investment Companies, Securities Act Release No. 8998, Investment
    Company Act Release No. 28584 (Jan. 13, 2009), 74 Fed. Reg. 4546 (Jan. 26, 2009) .......... 14

## PRELIMINARY STATEMENT

Plaintiff Christine A. Smith ("Ms. Smith") accuses Massachusetts Financial Services Company and its subsidiary MFS Fund Distributors, Inc (collectively "MFS") of securities fraud. She charges that the prospectuses pursuant to which she purchased shares in two MFS-managed funds contained material omissions and misleading statements of fact. But the facts she pleads show nothing of the sort.

First, the gravamen of Ms. Smith's complaint is that MFS intentionally misled her to believe that the class A shares she bought in the two funds were her best investment choice compared with class B and C shares issued by the same funds. Yet she does not identify a single statement in the prospectuses that describes one share class as superior or inferior to any other share class or that recommends any particular share class to any particular investor. Instead, her theory is of fraud by implication.

Second, Ms. Smith claims that certain fee tables and expense examples used in the MFS funds' prospectuses were misleading in the absence of an additional table forecasting future account values for each of several classes of shares. But the SEC regulation that governs what must be presented in a mutual fund prospectus requires that the prospectus include a fee table and expense example containing exactly the information provided in the funds' tables and examples here. Ms. Smith does not allege that the fee tables and expense examples in the prospectuses of the funds in which she invested failed to comply with the format, methodology or content that SEC regulation mandates. Nor does she contend that the figures were inaccurate. At the same time, the SEC has specifically declined to require mutual fund prospectuses to include the forecasted account values table that Ms. Smith claims is necessary because such a table might confuse investors. Ms. Smith's theory of fraud by implication is thus premised on the inference to be drawn from the omission of a table that the SEC deems unnecessary.

1

Third, Ms. Smith pleads no particularized facts to show that MFS intended to defraud any fund investor. Instead, she makes conclusory allegations that MFS may have had a financial incentive to sell class A shares over class B or C shares. But completely absent from the complaint is any specific fact that would support a strong inference that anyone at MFS had an intent to deceive.

Fourth, the only harm Ms. Smith claims to have suffered is having to pay the sales charge and ongoing fees and expenses attributable to class A shares. But the prospectuses pursuant to which she made her investment expressly and accurately disclosed the fees and expenses borne by each of the share classes, and Ms. Smith has paid exactly the fees and expenses her prospectuses disclosed would be borne by class A investors.

Finally, examination of the prospectuses for the funds whose class A shares Ms. Smith purchased reveals that the fundamental fact premise of her complaint is illusory. Ms. Smith alleges that class A shares would never be the "best" option for her. However, had MFS included forecasted account values in the fund prospectuses, for investors who intended to hold their investments for at least ten years, class A shares were demonstrably expected to have higher total return and resulting account values than class B or C shares.

## STATEMENT OF THE CASE[1]

### A.     The Plaintiff

On September 1, 2005, Ms. Smith invested approximately $1,280 in class A shares of each of two MFS-managed funds, the MFS Total Return Fund and the MFS Capital Opportunities Fund.[2]

---

[1]     Although MFS disputes many of them, the complaint's factual allegations are assumed to be true for purposes of this motion.

[2]     Certification of Representative Plaintiff Pursuant to 15 U.S.C. § 78u-4(a)(2) ("Pl. Cert.") (attached to the complaint and reprinted as Exhibit A hereto).

### B.       The Defendants

Massachusetts Financial Services Company is an investment advisory firm that acts as adviser to the MFS family of mutual funds, including the 30 funds (the "MFS Funds") identified in the complaint.[3]  Cmplt. ¶ 11; Cmplt. Ex. 1.  MFS Fund Distributors, Inc. ("MFD"), a subsidiary, is the distributor and underwriter of MFS mutual funds shares.  Cmplt. ¶ 12.

### C.       The MFS Funds

Each of the MFS Funds offers its shares for sale pursuant to a prospectus.  Cmplt. ¶ 24.  As required by federal law, prospectuses are issued at least annually.  15 U.S.C. § 77j(a)(3).

Each MFS Fund offers, among others, class A, B, and C shares.  Cmplt. ¶ 25.  Although all share classes in any given fund invest in the same portfolio of investment assets, each share class has its own particular fee and expense structure.  Cmplt. ¶ 2.  Class A share investors may pay, at the time of investment, a sales charge, or "front-end load," equal to a percentage of their total initial investment.  Cmplt. ¶ 27.  The sales charge percentage is reduced for investors who make large investments.  Cmplt. ¶ 27.  Investors in B and C shares do not pay a front-end load, but they may pay a contingent deferred sales charge when they submit shares to the issuing fund for redemption.  Cmplt. ¶ 28.  All share classes pay annual expenses that consist of (i) management fees, (ii) distribution and service fees (known as "12b-1 fees"), and (iii) other miscellaneous expenses.  Cmplt. ¶ 29.  Class A shares pay lower 12b-1 fees—and therefore lower overall annual expenses—than class B or C shares.  Cmplt. ¶¶ 29-30.  Class B shares convert to class A shares after the investor has held them for 8 years.  Cmplt. ¶¶ 30, 75, 78.

### D.       Compensation of Intermediaries

MFS does not sell MFS Funds directly to members of the investing public.  Instead, MFS

---

[3]       MFS Investment Management, which the complaint also names as a defendant, is a trade name for Massachusetts Financial Services Company and is not a separate legal entity.

Funds are sold to investors by broker-dealers and other financial intermediaries, who receive a commission for the sale.  Cmplt. ¶¶ 22-23, 32.   The complaint alleges that MFS, the intermediary, and the intermediary's registered representative all have a financial incentive to sell class A shares rather than class B or C shares.  Cmplt. ¶¶ 32-35.

### E.   The Putative Class

The complaint alleges a class consisting of all persons who, between July 28, 2003 and July 28, 2008, purchased class A shares in one or more of the MFS Funds in an aggregate amount less than $50,000 and who paid a sales charge of 5.75%.  Cmplt. ¶¶ 1, 87.

### F.   The Prospectuses at the Time of Ms. Smith's Investments

At the time of Ms. Smith's investments, MFS offered shares of the Total Return Fund pursuant to a prospectus dated February 1, 2005.  MFS Total Return Fund Prospectus, dated Feb. 1, 2005 ("TRF Pros. 2/1/05") (Exhibit ("Ex.") B).  At the same time, MFS offered shares of the Capital Opportunities Fund pursuant to a prospectus dated April 1, 2005.  MFS Capital Opportunities Fund Prospectus, dated Apr. 1, 2005 ("COF Pros. 4/1/05") (Ex. C).[4]  As reflected in the respective prospectuses, the maximum sales charge for class A shares at the time of Ms. Smith's purchases was 4.75% for the MFS Total Return Fund and 5.75% for the MFS Capital Opportunities Fund.  TRF Pros. 2/1/05, at 10 (Ex. B); COF Pros. 4/1/05, at 7 (Ex. C).  Not all shareholders who purchased class A shares paid the maximum sales charge.  *See* Cmplt. ¶ 27; TRF Pros. 2/1/05, at 17-21 (Ex. B); COF Pros. 4/1/05, at 15-19 (Ex. C).

### G.   Regulation of Mutual Fund Prospectuses

A regulation promulgated by the SEC, Form N-1A, comprehensively prescribes detailed disclosure requirements for mutual fund registration statements, including constituent

---

[4]    Each fund issued a supplement dated September 1, 2005 to its respective prospectus.  The information in the supplements either duplicates information in the prospectuses or is not relevant to issues in this action.

prospectuses.  Cmplt. ¶ 15; Form N-1A (Ex. D).[5]  Form N-1A consists of over 50 pages of

disclosure requirements and instructions.  It also prescribes the format and calculation

methodology for certain charts and tables that prospectuses are required to present, including the

"fee table," "expense example," and "performance table."

## H.     The Alleged Omissions and Misrepresentations

The complaint alleges that the MFS Funds' prospectuses are materially misleading in

three respects:

- First, the prospectuses do not include information about relative account values—the projected future amount an investment would be worth under certain assumptions.  Ms. Smith alleges that in the absence of this information, the prospectuses' fee tables and expense examples falsely imply that the "the share class with the lowest represented expenses—the class A share—… equate[s] to higher account values, or higher returns." Cmplt. ¶¶ 36-60.

- Second, the prospectuses omit disclosure of compensation paid to broker-dealers that sell MFS Funds' shares to investors.  Ms. Smith alleges that such compensation gave the broker-dealers a financial incentive to sell class A shares over other share classes.  Cmplt. ¶¶ 33, 61-71.

- Third, investment performance tables in the prospectuses fail to reflect that class B shares convert into class A shares after eight years, thereby allegedly falsely implying that, after a ten-year holding period, class A shares would have higher cumulative returns and account values than B shares.  Cmplt. ¶¶ 72-78.

Ms. Smith alleges that, as a result of these alleged omissions and misrepresentations, she

invested in class A shares rather than another share class, and that as a result she has paid

"unnecessary fees" and has suffered "decreased returns" and "lower overall value" on her

investments.  Cmplt. ¶¶ 5, 99, 104, 107.

---

[5]     The SEC periodically revises Form N-1A.  References to Form N-1A throughout this memorandum refer to the version of Form N-1A in effect both at the time MFS filed with the SEC the February 1, 2005 and April 1, 2005 prospectuses for Ms. Smith's two MFS Funds and at the time of her September 1, 2005 share purchases.  No SEC amendments to Form N-1A during the proposed class period altered the disclosure requirements for the portions of the prospectuses identified by Ms. Smith as allegedly misleading.

**ARGUMENT**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts must accept only well-pleaded factual allegations as true, and "bald assertions" and "unsupportable conclusions … need not be credited." *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 33 (1st Cir. 2007) (quoting *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996)).

Moreover, special pleading rules apply to securities fraud claims. Both the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 9(b) heighten ordinary pleading standards.[6] 15 U.S.C. § 78u-4(b)(1)-(2); FED. R. CIV. P. 9(b). In a case under Section 10(b), the PSLRA requires that "the complaint … specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." In addition, the PSLRA requires plaintiffs to "state with *particularity* facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added); *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193-94 (1st Cir. 1999). Plaintiff's allegations fall far short of these heightened pleading requirements.

In deciding a motion to dismiss a securities fraud claim, the Court may properly consider matters of which it may take judicial notice, including documents publicly filed with the SEC, and all relevant portions of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007); *Shaw v.*

---

[6]   Even under pleading standards applicable to non-securities fraud claims, mere "formulaic recitation of the elements of a cause of action" is not enough. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

*Digital Equip. Corp.*, 82 F.3d 1194, 1206 n.13, 1220 (1st Cir. 1996)  "Were the rule otherwise, a plaintiff could maintain a claim of fraud by excising an isolated statement from a document and importing it into the complaint, even though the surrounding context imparts a plainly non-fraudulent meaning to the allegedly wrong statement."  *Shaw*, 82 F.3d. at 1220.  Here, Ms. Smith alleges securities fraud based on the contents of MFS mutual fund prospectuses.  Thus, the Court may consider documents such as the MFS Funds' prospectuses and statements of additional information (the "SAIs"), which together comprise the Funds' registration statements filed with the SEC on Form N-1A.

## I.     MS. SMITH LACKS STANDING.

Article III of the Constitution limits the jurisdiction of federal courts to "[c]ases" and "[c]ontroversies."  U.S. CONST. art. III, § 2.  A component of this requirement is "standing."  *Flast v. Cohen*, 392 U.S. 83, 94-95, 99-100 (1968).  Standing requires a plaintiff to establish a "'personal stake' in the alleged dispute, and that the alleged injury is particularized as to him."  *Raines v. Byrd*, 521 U.S. 811, 819 (1997).

As this Court has explained, "[s]tanding is a threshold inquiry and is particularly important in securities litigation, where strict application of standing principles is needed to avoid vexatious litigation and abusive discovery."  *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 118-19 (D. Mass. 2006) (O'Toole, J.).  To establish standing, Ms. Smith must allege (i) a "personal injury," (ii) that is "fairly traceable to the defendants' allegedly unlawful conduct" and (iii) that is "likely to be redressed by the requested relief."  *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 41 (D. Mass. 2003) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)).  Here, Ms. Smith has failed to allege *any* injury traceable to *any* alleged misconduct.

A.     **Ms. Smith Lacks Standing With Respect To Funds In Which She Did Not Invest.**

Ms. Smith purports to bring claims on behalf of investors in the 30 MFS Funds. However, she purchased shares in only two of those funds, and thus, she lacks standing to assert claims involving the other 28 funds.

This Court and other judges in this district have consistently held, in a variety of contexts, that plaintiff mutual fund investors lack standing to assert claims relating to "mutual funds they did not own despite the fact that they owned shares in other funds in the fund complex." *Forsythe*, 417 F. Supp. 2d at 119 (citing cases) (dismissing claim under Investment Company Act Section 36(b)); *see, e.g., Nenni v. Dean Witter Reynolds, Inc.*, No. 98-12454-REK, 1999 WL 34801540, at *2 (D. Mass. Sept. 29, 1999) (dismissing Section 10(b) claim); *In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 40-41 (D. Mass. 2003) (same); *Stegall v. Ladner*, 394 F. Supp. 2d 358, 362-63 (D. Mass. 2005) (dismissing various Investment Company Act claims).  The complaint in *Nenni*, for example, asserted Section 10(b) claims against a fund investment adviser and underwriter-distributor.  *Nenni*, 1999 WL 34801540, at *1-2.  Plaintiff brought suit as a class action on behalf of purchasers of shares of 41 mutual funds, in only four of which plaintiff had invested.  The court dismissed plaintiff's claims relating to the 37 funds he did not own.  Judge Keeton held that a plaintiff "at most can only create a class of people who have purchased shares of the *same* … mutual funds," and could not proceed with claims based on other funds.  *Id.* at *2 (emphasis added).  For the same reason, the Court should dismiss all of Ms. Smith's claims involving the 28 MFS Funds in which she has not purchased shares.[7]

_____

[7]     There is also strong body of case law outside the First Circuit dismissing the Section 10(b) claims for lack of standing with respect to mutual funds in which plaintiffs did not invest.  *See, e.g., Hoffman v. UBS-AG*, No. 05-6817 (LBS), 2008 WL 4684168, at *3-5 (S.D.N.Y. Oct. 22, 2008) ("Plaintiffs in this case cannot meet the injury requirement for claims relating to funds in which they have not purchased shares because they cannot claim to be personally injured by the violations relating to those funds."); *In re AIG Advisor Group Sec. Litig.*, No. 06-1625 (JG), 2007 WL 1213395, at *4-6 (E.D.N.Y. Apr. 25, 2007); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441

**B.     Ms. Smith Lacks Standing With Respect To Claims Relating To The Two Funds' Class A Shares That She Purchased.**

Even as to the two MFS Funds in which she claims to have invested, Ms. Smith lacks standing because she has, in fact, not suffered the injury described by the complaint.  Ms. Smith alleges that investors who paid a 5.75% sales charge have suffered an injury.  *See, e.g.*, Cmplt. ¶ 55.  Indeed, the complaint defines the putative class to include only individuals "who paid an A-share load of 5.75%."  Cmplt. ¶ 87.  When Ms. Smith purchased shares of the MFS Total Return Fund on September 1, 2005, that fund's then current prospectus reflects that the maximum sales charge for class A shareholders was 4.75%.  TRF Pros. 2/1/05, at 10 (Ex. B).  Ms. Smith does not allege otherwise.  She does not—and cannot in good faith—plead that she personally paid a 5.75% sales charge, and the complaint does not purport to describe a case or controversy with respect to investors who paid less than a 5.75% sale sales charge.

Nor has Ms. Smith suffered any injury based upon her purchase of shares in the MFS Capital Opportunities Fund.  She alleges that the MFS Funds' prospectuses misled investors because they omitted to show projected account values after a ten year investment period, a showing which, according to Ms. Smith, would have demonstrated that class A shares are never investors' "best" choice in the "long-term."  Cmplt. ¶¶ 51-55.  The complaint presents three such hypothetical projected account value tables for three prospectuses other than the April 1, 2005 prospectus for MFS Capital Opportunities Fund in effect at the time Ms. Smith purchased her shares of that fund.  Cmplt. ¶ 51; Cmplt. Exs. 3-4.  Had the complaint included a hypothetical

---

F. Supp. 2d 579, 607 (S.D.N.Y. 2006).

          In addition to focusing on Article III standing, courts sometimes use the statutory requirements of the securities laws to analyze standing.  Statutory standing under Section 10(b) is limited to "purchasers-in-fact or sellers-in-fact of securities."  *Nenni*, 1999 WL 34801540, at *2 (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 735 (1975)).  Since Ms. Smith does not allege that she purchased or sold shares in 28 of the 30 MFS Funds, the analysis under either constitutional or statutory standing reaches the same result and compels dismissal of her claims involving the 28 MFS Funds whose shares she did not purchase.

projected account value table based upon the information presented in the Capital Opportunities

Fund prospectus in effect at the time of Ms. Smith's purchase, it would have disclosed that class

A shares—the share class Ms. Smith purchased—would in fact project a higher account value

after ten years than either B or C shares.  *See* Implied Account Values and Expenses for Class A,

B, and C Shares of the MFS Capital Opportunities Fund Pursuant to the April 1, 2005 Prospectus

(Ex. E).[8]

Finally, as this Court has explained, Ms. Smith may not "avoid the standing inquiry

merely by styling [her] suit as a class action."  *Forsythe*, 417 F. Supp. 2d at 119.  "That a suit

may be a class action … adds nothing to the question of standing."  *Simon v. Eastern Ky.*

*Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976).  Rather, "even named plaintiffs who represent

a class must allege and show that they *personally have been injured*, not that injury has been

suffered by other, unidentified members of the class to which they belong and which they

purport to represent."  *Forsythe*, 417 F. Supp. 2d at 119 (emphasis added, internal punctuation

omitted); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996); *Warth v. Seldin*, 422 U.S. 490, 502

(1975); *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).  Other than a conclusory allegation that

Ms. Smith "is a member of the Class" and has "suffered damages as a result of defendants'

conduct," Cmplt. ¶ 9, the facts alleged in the complaint show that Ms. Smith could not in fact

have been injured on the theory proffered by her complaint.

## II.   THE COMPLAINT FAILS TO PLEAD SECURITIES FRAUD.

To state a securities fraud claim under Section 10(b) of the Securities Exchange Act of

---

[8]      Projection of an account value involves nothing more than algebraic calculations using information in the prospectus.  Courts may take judicial notice of mathematical formulae.  *See* FED. R. EVID. 201; *Binder v. Long Island Lighting Co.*, 847 F. Supp. 1007, 1027 (E.D.N.Y. 1994) (taking judicial notice of formula for compound interest), *modified on other grounds*, 57 F.3d 193 (2d Cir. 1995); *Miller v. Fed. Land Bank of Spokane*, 587 F.2d 415, 422 (9th Cir. 1978) (district court should have taken judicial notice of lower interest payment from reduction of principal and shorter amortization period as "a matter of mathematics").

1934 and SEC Rule 10b-5 thereunder, Ms. Smith must plead: (i) a material misrepresentation or

omission; (ii) defendant's scienter; (iii) in connection with the purchase or sale of a security; (iv)

reliance; (v) economic loss; and (vi) loss causation. *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512

F.3d 46, 58 (1st Cir. 2008) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).

The complaint, however, fails to plead a number of essential elements—material omission or

misrepresentation, scienter, reliance, and loss causation.

### A.     The Complaint Identifies Nothing Fraudulent in Ms. Smith's Own Funds' Prospectuses.

As a threshold matter, the complaint does not allege any fraud as to the prospectuses for

Ms. Smith's funds.  When Ms. Smith purchased her shares, the prospectuses in effect for her two

funds were dated February 1, 2005, and April 1, 2005, respectively.  TRF Pros. 2/1/05 (Ex. B);

COF Pros. 4/1/05 (Ex. C).  The complaint does not so much as mention either prospectus.  It

references only prospectuses for other years and/or for other funds.[9]  But none of these

prospectuses is relevant to Ms. Smith's purchase.  The failure even to identify the specific

prospectuses that Ms. Smith alleges to be fraudulent, much less explain what about those

particular prospectuses was false or misleading falls well short of Fed. R. Civ. P. 9(b) and the

PSLRA's pleading requirements.[10]

### B.     MFS Had No Duty To Disclose Allegedly Omitted Information.

It is "a fixture in federal securities law" that "silence, absent a duty to disclose, cannot be

---

[9]     *See* Cmplt. ¶ 4 n.2 (MFS Capital Opportunities Fund Prospectus, dated Apr. 1, 2007), ¶¶ 40-41, 43, 47
(MFS Core Equity Fund Prospectus, dated Jan. 1, 2008); ¶¶ 51-52 (MFS Core Equity Fund Prospectus, dated Feb. 1,
2007), ¶ 62 (unidentified prospectus, dated Feb. 1, 2006); ¶ 63 (MFS Capital Opportunities Fund Prospectus, dated
Apr. 1, 2003), ¶ 74 (Massachusetts Investors Growth Stock Fund Prospectus, dated Apr. 1, 2008); Cmplt. Exs. 2, 3
(MFS Core Equity Fund Prospectus, dated Jan. 1, 2008); Cmplt. Ex. 4 (Capital Opportunities Fund Prospectus,
dated Apr. 1, 2003).

[10]     This is not a mere technicality.  As a comparison of Ms. Smith's own prospectuses with one another shows,
different MFS Funds had different fee structures.  TRF Pros. 2/1/05, at 10 (Ex. B); COF Pros. 4/1/05, at 7 (Ex. C).
The fee structure is central to which share class represented the best long-term option for an investor.  Ms. Smith's
failure to plead fraud as to her own prospectuses underscores the fundamental deficiency of her complaint.

actionably misleading." *Shaw*, 82 F.3d at 1202.  Leaving aside insider trading (which is irrelevant here), that duty arises in only two circumstances: (i) where a statute or rule specifically requires disclosure; or (ii) where a prior statement was "inaccurate, incomplete or misleading" in the absence of the omitted information.  *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 27 (1st Cir. 1987).  Neither circumstance obtains here.

### 1.    MFS had no duty to disclose relative account values.

Ms. Smith alleges that a table of relative projected account values of share classes was necessary to make the Funds' prospectuses not misleading.  *See* Cmplt. ¶¶ 49-60.  She claims that without such information, four portions of the prospectus—the "fee table," "expense example," "financial highlights," and "distribution and service fees table"—were misleading because they portrayed class A shares as the "least expensive" or the "best performing."  Cmplt. ¶¶ 40-48.  But there was no duty to include that information because (i) no statute or regulation required MFS to disclose relative account values and (ii) the prospectuses, taken as a whole, were not misleading or incomplete in their absence.

First, no statute or regulation specifically required MFS Fund prospectuses to disclose relative account values.  Mutual fund prospectuses (and full registration statements) are subject to a comprehensive regulatory regime.  In particular, mutual fund prospectuses must comply with the detailed disclosure regimen set forth in Form N-1A (Ex. D hereto).  The SEC "has designed Form N-1A to provide investors with information that will assist them in making a decision about investing in an investment company eligible to use the Form."  Form N-1A, at 1 (Ex. D).  The vast majority of a mutual fund prospectus' content is specifically required by Form N-1A.  Among other things, Form N-1A prescribes the format, content, and methodology of the "fee table" and "expense example."  *Id.* at Item 3.

12

Nowhere does Form N-1A require disclosure of relative account values.[11]  To the contrary, the SEC has explicitly rejected requiring this disclosure on two occasions because the information might mislead investors.  For example, when amending Form N-1A to add the "expense example" requirement in 1988, the SEC stated in the adopting release that "[b]ecause the Example will focus on fund expenses *and not account values*, the possibility that investors will be misled and believe that these figures represent projections is significantly diminished."[12]  Similarly, when it amended Form N-1A in 1995 in connection with its adoption of a regulatory framework for mutual funds to issue multiple classes of shares, the SEC specifically considered whether to include a line graph comparing the performance of each share class assuming an investment of $10,000 and 5% return.[13]  After receiving public comment raising the concern that such disclosure could be confusing or misleading, the SEC decided against adding the requirement.  60 Fed Reg. at 11884.  In short, the SEC has deliberately determined not to impose the very duty of disclosure on which Ms. Smith premises her omitted account value claim.

Moreover, including disclosure tailored for specific subsets of investors—namely, those making "investments under $50,000" and paying a 5.75% sales charge (Cmplt. ¶ 55)—runs directly counter to Form N-1A's objectives.  The prospectus is intended to provide basic information for "an average or typical investor," not particularized advice tailored to individual investors.  Form N-1A, Gen'l Instr. C.1(c) (Ex. D).  Moreover, the SEC instructs that,

[11]    The sole regulatory requirement that Ms. Smith references is Form N-1A's General Instruction C.1(d).  *See* Cmplt. ¶ 58.  But that instruction is not a disclosure requirement and does not mention relative account values.  Rather, it merely states, "The requirements for prospectuses included in Form N-1A will be administered *by the Commission* in a way that will allow variances in disclosure or presentation if appropriate for the circumstances involved while remaining consistent with the objectives of Form N-1A."  Form N-1A, Gen'l Instr. C.1.(d) (Ex. D) (emphasis added).

[12]    Consolidated Disclosure of Mutual Fund Expenses, Securities Act Release No. 6752, Investment Company Release No. 16244 (Feb. 1, 1988), 53 Fed. Reg. 3192, 3195 (Feb. 4, 1988) (emphasis added).

[13]    Exemption for Open-End Management Investment Companies Issuing Multiple Classes of Shares; Disclosure by Multiple Class and Master Feeder Funds; Voting on Distribution Plans, Securities Act Release No. 7143, Investment Company Act Release No. 20915 (Feb. 23, 1995), 60 Fed. Reg. 11876, 11884 (Mar. 2, 1995).

"[d]isclosures in the prospectus should be designed to assist an investor in comparing and contrasting the Fund with other funds," rather than contrasting share classes with one another. *Id.* Responsibility for providing such particularized advice about the suitability of particular share classes falls on the shoulders of each investor's financial advisor or other financial intermediary. Indeed, since it first adopted Form N-1A in 1983, the SEC has worked to streamline and simplify mutual fund prospectus disclosure to keep it understandable to the average investor.[14] When the SEC chose "not to adopt[] most of the proposed disclosure requirements" regarding multiple class mutual funds, it decided to focus on "consumer education" and the "duties of sales representatives when recommending" multiple class funds "[i]nstead of relying on prospectus disclosure."[15]

Second, the MFS Fund prospectuses were neither misleading nor incomplete in the absence of relative account values. Yet a duty arises to correct or supplement a statement only when the statement is misleading in the absence of the omitted information—*i.e.*, where the statement made would be "so incomplete as to mislead." *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990) (en banc). Ms. Smith does not allege that the information in the "fee table," "expense example," "financial highlights," and "sales and distribution fees table" is inaccurate or fails to comply with precisely what Form N-1A mandates. Rather, Ms. Smith

---

[14]    Registration Form Used by Open-End Management Investment Companies; Guidelines, Securities Act Release No. 6479, Investment Company Act Release No. 13436 (Aug. 12, 1983), 48 Fed. Reg. 37928 (Aug. 22, 1983) (adoption of two-part format of N-1A, where additional information is available in the SAI); Registration Form Used by Open-End Management Investment Companies; New Disclosure Option for Open-End Management Investment Companies, Securities Act Release No. 7512, Investment Company Act Release No. 2304 (Mar. 13, 1998), 63 Fed. Reg. 13916, 13918 (Mar. 23, 1998) (overhaul of prospectus pursuant to "plain English" initiatives); Enhanced Disclosure and New Prospectus Delivery Option for Registered Open-End Management Investment Companies, Securities Act Release No. 8998, Investment Company Act Release No. 28584 (Jan. 13, 2009), 74 Fed. Reg. 4546, 4560 (Jan. 26, 2009) (a shorter, "summary prospectus" can be used provided full prospectus is readily available).

[15]    Exemption for Open-End Management Investment Companies Issuing Multiple Classes of Shares; Disclosure by Multiple Class and Master Feeder Funds; Voting on Distribution Plans, Securities Act Release No. 7143, Investment Company Act Release No. 20915 (Feb. 23, 1995), 60 Fed. Reg. 11876, 11881-82 (Mar. 2, 1995).

contends that the information in those sections *implied* that "the share class with the lowest represented expenses—the class A share—[must] equate to higher account values, or higher returns." Cmplt. ¶ 49.

Ms. Smith's theory of fraud by implication simply withers under scrutiny. For one thing, the theory alleges a fraudulent *implication* despite the fact that the MFS Fund prospectuses contain no statement that can fairly be read to recommend class A shares over class B or C shares for any particular investor. For another, the theory alleges that a fraud can grow out of compliance with explicit SEC disclosure requirements. Finally, while the complaint treats each of the four allegedly misleading prospectus sections in isolation, "[t]he central inquiry" in determining whether prospectuses or registration statements are materially misleading is whether the disclosures "taken together and in context" would mislead "a reasonable investor about the nature of the investment." *In re Computervision Corp. Sec. Litig.*, 869 F. Supp. 56, 60 (D. Mass. 1994); *see also I. Meyer Pincus & Assocs. v. Oppenheimer & Co.*, 936 F.2d 759, 761 (2d Cir. 1991). Taken together and in context there is nothing misleading in the prospectuses.

***The fee table.*** Ms. Smith alleges that the "fee table"[16] was misleading because it portrayed class A shares as "the least expensive share class." Cmplt. ¶ 40. To support this allegation, Ms. Smith reprints seven lines from a January 1, 2008 MFS Core Equity Fund prospectus fee table. But looking at the entire fee table refutes the allegation. While Ms. Smith's excerpt accurately discloses that class A shares have lower annual fees (1.21%) than class B or C shares (each at 1.86%), Cmplt. ¶ 40, the entire fee table discloses that class A shares are not necessarily "the least expensive share class," because unlike class B and C shares, class A shares bear up to a 5.75% sales charge. Cmplt. Ex. 2 (entire expense table excerpted in Cmplt.

---

[16]   The MFS Fund prospectuses use the term "Expense Table."

¶ 40).

**The expense example.**  Ms. Smith's contention (Cmplt. ¶¶ 41-42) that the "expense example"[17] is misleading also does not pass muster.  Ms. Smith contends that the expense example's accurate disclosure that class A shares have lower cumulative expenses over ten years than B or C shares implies that "class A shares represent a better long-term choice than either class B or class C shares."  Cmplt. ¶ 42.  But the expense example says no such thing.  In particular, the prospectus does not equate lower expenses to higher account values.  The January 1, 2008 MFS Core Equity Fund prospectus excerpted in the complaint states—using the precise language required by Form N-1A—that "[t]hese examples are intended to help you compare the *cost* of investing in the fund with the *cost* of investing in other mutual funds."  Cmplt. Ex. 2, at 9 (emphasis added); *see* Form N-1A, Item 3 (Ex. D) (specifying this language).

**The financial highlights table.**  Ms. Smith also claims that "MFS designed the financial highlights tables to showcase A shares as the share class with the highest past return for each of the past five years and, therefore, as the best performing share."  Cmplt. ¶ 45.  Ms. Smith alleges that the table is misleading in two ways:  (i) by failing to take into account class A share sales charges, and (ii) by failing to take into account the fact that B shares convert into class A shares after 8 years.  Cmplt. ¶ 45.  Again, the claim does not withstand scrutiny.

First, the "financial highlights" section of the January 1, 2008 Core Equity Fund prospectus referred to in the complaint expressly disclosed, as Ms. Smith concedes (Cmplt. ¶ 45), that "[t]otal returns do not include any applicable sales charges."  MFS Core Equity Fund Prospectus, dated Jan. 1, 2008 ("CEF Pros. 1/1/08") (Ex. F), at 36, 45.  The point could not be clearer.  Nor did MFS have discretion in the matter, for Form N-1A expressly requires:  "Do not

---

[17]    The MFS Fund prospectuses use the term "Example of Expenses."

reflect sales load or account fees in the initial investment, but, if sales loads or account fees are imposed, note that they are not reflected in total returns." Form N-1A, Item 9, Instr. 3(b) (Ex. D).  The prospectus identified by Ms. Smith complies with this instruction,  and Ms. Smith cannot rationally allege that SEC disclosure requirements are an instrument of fraud by implication. *See* CEF Pros. 1/1/08, at 36, 45 (Ex. F).

Second, the financial highlights table does not reflect the fact that class B shares convert into A shares after 8 years for the simple reason that the table, as instructed by Form N-1A, only "[p]resent[ed] the information … for each of the last 5 fiscal years." Form N-1A, Item 8(a), Instr. 1(a); *see* CEF Pros. 1/1/08, at 36-38 (Ex. F).  Nor did MFS conceal the fact of the conversion.  Elsewhere the same prospectus expressly discloses, "If you hold Class B shares for approximately eight years, they will convert to Class A shares of the fund."  CEF Pros. 1/1/08, at 10, 15 (Ex. F).  And, an investor interested in the class B shares' return after conversion to A shares could simply examine the financial highlights information on A shares.

***The distribution and service fees table.***  Finally, Ms. Smiths claim that the "distribution and service fees" table "inappropriately suggest[s] … that class A shares represent a less expensive and therefore better investment choice than either class B or class C shares," apparently because the table accurately discloses that A shares have lower ongoing distribution and service fees than class B or C shares do.  Cmplt. ¶¶ 47-48.  But again, there is nothing misleading about this table.  The table is just one part of a prospectus section entitled, "Description of Share Classes."  The distribution and service fees table accurately describes exactly what it purports to describe.  Elsewhere in that section, a subpart entitled "Sales Charges and Waivers or Reductions" disclosed that class A shares are subject to up to a 5.75% sales charge and that class B and C shares have no such charge.  CEF Pros. 1/1/08, at 8 (Ex. F).

17

Rather than suggesting that class A shares "represent a less expensive and therefore better investment choice," the prospectus accurately discloses that A shares impose higher up front sales loads but lower continuing fees than the other share classes.

**2.      MFS had no duty to disclose broker-dealer compensation.**

Ms. Smith alleges that MFS "crafted [broker-dealer] commission arrangements that encouraged the sale of class A shares over class B or class C shares." Cmplt. ¶ 62. According to Ms. Smith, "MFS did not adequately disclose these arrangements in the fund prospectuses, nor the additional conflicts of interest that resulted." Cmplt. ¶ 62. This allegation fails because (i) MFS disclosed the very information Ms. Smith contends was necessary, and (ii) there was no duty to disclose such information in any event.

First, the disclosure Ms. Smith alleges to be missing is set forth in the prospectus she references. Ms. Smith describes a particular MFS Fund prospectus—the April 12, 2003 Capital Opportunities Fund prospectus, which predates her own by two years—as making a "reference to adviser commissions" that she characterizes as "illusory." Cmplt. ¶ 63. The complaint neglects to mention, however, an additional reference to adviser commissions in that same prospectus. That disclosure states, "If you purchase your fund shares through a financial adviser … the adviser may receive commissions or other concessions which are paid from various sources, such as from the sales charges and distribution fees, or from MFS or MFD." MFS Capital Opportunities Fund Prospectus, dated Apr. 1, 2003 ("COF Pros. 4/1/03"), at 13 (Ex. G). In addition, the SAI to that prospectus disclosed that "[d]ealers may receive different compensation with respect to sales of Class A, Class B, [and] Class C shares" and detailed the actual commissions paid for each share class. MFS Capital Opportunities Fund Prospectus, dated April

1, 2003 ("COF SAI 4/1/03"), at II.B (Ex. H).[18]

Ms. Smith also points to a prospectus prepared by American Funds, an entirely unrelated mutual fund family, as a model that "clearly discloses" the alleged broker-dealer conflict. Cmplt. ¶¶ 67-68.  But the MFS funds disclosed the same information.  In the "sales charges" section of its fund prospectus, American Funds included a table with three columns of information as to class A shares:  (i) sales charge as percentage of offering price, (ii) sales charge as percentage of net amount invested, and (iii) dealer commission as a percentage of offering price.  A table with the first two columns of information appears in the very MFS Fund prospectus identified in the complaint as misleading, and a table with the third column was in the Statement of Additional Information ("SAI") that is incorporated by reference into the prospectus.  COF Pros. 4/1/03, at 14 (Ex. G); MFS Capital Opportunities Fund SAI, dated Apr. 1, 2003 ("COF SAI 4/1/03"), at I.C-1 (Ex. H).[19]

Second, Ms. Smith can point to nothing in Form N-1A or other SEC rule that requires a mutual fund prospectus to include any more information about the compensation paid to broker-dealers selling a fund's shares than the information disclosed in the MFS Funds' prospectuses.  When Ms. Smith's 2005 prospectuses were prepared, the SEC simply did not require any disclosure of compensation arrangements with retail broker-dealers who sell shares of mutual funds to the public.  *See* Form N-1A (Ex. D).  Courts considering the issue concluded that "[c]urrent SEC regulations, including Form N-1A, do not impose a disclosure obligation with

---

[18]    Moreover, Ms. Smith's own 2005 SAIs stated, "You should ask your financial intermediary for information about any payments it receives from MFD or the Funds and any services it provides, as well as about fees and/or commissions it charges."  Capital Opportunities Fund SAI, dated Apr. 1, 2005 ("COF SAI 4/1/05"), at II.B-3 (Ex. I).  The same language appeared in both of Ms. Smith's SAIs.

[19]    Ms Smith's SAIs, which her prospectuses incorporated by reference, are part of the prospectus "as a matter of law."  *White v. Melton*, 757 F. Supp. 267, 269 (S.D.N.Y. 1991).  Further, the sales charge section of the prospectus specifically directed Ms. Smith to the SAI for further information.

respect to broker compensation." *Benzon v. Morgan Stanley Distribs.*, 420 F.3d 598, 612 (6th

Cir. 2005); *accord In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03-8208

(RO), 2006 WL 1008138, at *7 (S.D.N.Y. Apr. 18, 2006).

### C.      Any Alleged Omission or Misrepresentation Was Immaterial.

As the Supreme Court has made clear, an immaterial misrepresentation or omission is not

actionable. *Dura Pharms., Inc.*, 544 U.S. at 341-42.  Absent a "substantial likelihood" that the

reasonable investor would view the additional information "as having significantly altered the

total mix of information," the information is immaterial.  *Basic Inc. v. Levinson*, 485 U.S. 224,

231-32 (1988); *SEC v. Tambone*, 550 F.3d 106, 130 n.32 (1st Cir. 2008).

### 1.      Relative account values are not material because they do not add information to what is already available in the prospectus.

As explained earlier, *see supra* Section II.B.1, MFS Fund prospectuses disclose

information using the specific format and content that the SEC dictates in Form N-1A.  The SEC

has considered and rejected an additional requirement that prospectuses include projected

account values as well.[20]  Considering the extensive regulatory regime governing mutual fund

disclosures, the absence of a regulation requiring disclosure is a strong indication that the

information is not material.  *Geiger v. Solomon-Page Group, Ltd.*, 933 F. Supp. 1180, 1187

(S.D.N.Y. 1996).

The SEC's approach is unsurprising, because relative account values add no new

information to the prospectus.  As two Circuit Courts of Appeals have concluded, investors can

figure out the best share class for themselves by using the fee and expense information disclosed

in a mutual fund prospectus.  *Benzon*, 420 F.3d at 608-09; *see DeBenedictis v. Merrill Lynch &

Co.*, 492 F.3d 209, 216-17 (3d Cir. 2007).  "While [relative merits] *might* have facilitated an

---

[20]      *See* notes 12-13, *supra.*

investor's task in comparing the share classes, the critical question is whether they would have significantly altered the total mix of information made available." *Benzon*, 420 F.3d at 609 (internal punctuation and citation omitted). "Given that the disclosures [plaintiff] propose[s] are merely interpretations drawn from the facts presented in the prospectuses, and do not actually provide new information, they would not have significantly altered the total mix of the information already presented in the prospectus." *Id.* (internal punctuation and citations omitted). Ms. Smith does not and cannot allege that the hypothetical "Implied Account Values and Expenses" tables which she proposes to cure a purported fraud were calculated on the basis of any information other than information actually supplied by the prospectuses themselves. Cmplt. ¶ 51; Cmplt. Exs. 3-4 (identified as "pursuant to" a particular prospectus).

> **2.     Broker-dealer compensation information was not material because the Funds' prospectuses disclosed broker-dealer interest and because Ms. Smith pleads no reliance upon any broker-dealer's advice.**

Ms. Smith claims, in conclusory fashion, that broker-dealer conflict of interest information was "material" because "any reasonable investor would view them as having significantly altered the total mix of information important in making an investment decision." *See* Cmplt. ¶ 71. But as explained above, the MFS Funds' prospectuses and SAIs disclosed the financial intermediary's potential conflict, so that information was already in the "total mix" of information available to her. *See* Section II.B.2, *supra*; *see also Basic Inc.*, 485 U.S. at 231-32.

Ms. Smith also makes a generalized statement that "[broker-dealers] and their registered representatives are affected by the substantial inducement to sell class A shares," Cmplt. ¶ 35, but she does not make an essential allegation with respect to her own investment decision. She never claims that her own broker recommended class A shares or played any role in her decision to purchase the funds' class A shares. *See* Cmplt. ¶¶ 22, 32 ("[s]hares of the MFS Funds are sold to investors by registered representatives who work for [broker-dealers]"). Ms. Smith has not

alleged, and cannot allege, that the compensation structure creates a conflict of interest between MFS and investors, for it is the registered representatives of broker-dealers who are charged with providing suitable, unbiased and appropriate investment advice to their clients.[21]

> **3.    The alleged inaccuracies in certain "performance tables" were not material to Ms. Smith.**

Ms. Smith's alleges a misrepresentation in "*some* Performance Tables" because they reflect a calculation error such that they allegedly "wrongly imply that class A shares have the highest historical returns" after ten years.  Cmplt. ¶ 72 (emphasis added); *see* Cmplt. ¶ 76 (explaining calculation error).  The only example she uses is an April 2008 prospectus for the Massachusetts Investors Growth Stock Fund  (Cmplt. ¶¶ 74-78)—a fund whose shares Ms. Smith does not allege that she has ever purchased.  Pl. Cert. (Ex. A).

Ms. Smith makes no allegation about the funds she *did* purchase, however, and with good reason.  Even if the performance tables in her prospectuses included the calculation error she identifies, correcting the error would not change the relative ranking of the 10-year performance—and hence the relative ranking of account values—of the Funds' respective A, B and C class shares.  Ms. Smith does not and cannot allege otherwise.  Since with or without the alleged error, the table would show that class A shares are projected to have the best 10-year performance, the error could not be material.  *See Basic Inc.*, 485 U.S. at 231-32.

---

[21]    The case cited in the complaint (¶ 65), *Siemers v. Wells Fargo & Co.*, which discussed whether there was a duty to disclose fee allocation to brokers, is inapposite here.  In *Siemers*, the financial intermediary was the defendant—not the mutual fund adviser.  The issue was the intermediary's duty to disclose to his client the "secret" fees the intermediary received in alleged shelf-space arrangements.  The plaintiff alleged he "got biased advice from [his] broker[] when [he] thought [he] was getting impartial recommendations."  No. 05-04518 (WHA), 2006 WL 2355411, at *1 (N.D. Cal. Aug. 14, 2006).  As another district court held more recently, *Siemers* applies only when investors received advice from allegedly conflicted brokers such that the conflict would have changed the investor's decision-making process.  *In re Smith Barney Fund Transfer Agent Litig.*, No. 05-7583 (WHP), 2007 WL 2809600, at *3 (S.D.N.Y. Sept. 26, 2007); *see In re AIG Advisor Group*, No. 06-1625, 2007 WL 1213395, at *8 (E.D.N.Y. Apr. 25, 2007) (following *Siemers* where plaintiffs complained of biased advice).  Here, Ms. Smith does not allege she received biased advice, and her broker is not a defendant.

D.      The Complaint Fails To Allege Scienter.

Ms. Smith's securities fraud claim also fails because her allegations do not adequately

plead scienter—"a mental state embracing intent to deceive, manipulate, or defraud." *Ernst &*

*Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).  The PSLRA requires a plaintiff to "state

with *particularity* facts giving rise to a *strong inference* that the defendant acted with the

required state of mind."  15 U.S.C. § 78u-4(b)(2) (emphasis added); *Greebel*, 194 F.3d at 193-94.

A "merely reasonable" inference will not suffice; rather, an inference of fraudulent intent must

be "both reasonable *and* strong," *Greebel*, 194 F.3d at 195-96 (emphasis added), making it

"highly likely" that the defendant *knowingly*[22] violated the securities laws.  *Aldridge v. A.T.*

*Cross Corp.*, 284 F.3d 72, 82 (1st Cir. 2002) (emphasis added).

"[R]aising a 'strong inference' of scienter is no small burden."  *Cozzarrelli v. Inspire*

*Pharms. Inc.*, 549 F.3d 618, 624 (4th Cir. 2008).  As this Court has explained, the "strong

inference" standard is analogous to "clear and convincing evidence" or "highly probable"

standards.  *In re Parametric Tech. Corp. Sec. Litig.*, 300 F. Supp. 2d 206, 222 (D. Mass. 2001)

(O'Toole, J.).  Ms. Smith's "general averments of defendants' knowledge of material falsity will

not suffice"; instead, Ms. Smith must allege "particular times, dates, places or other details of

[the] alleged fraudulent involvement of the actors."  *Serabian v. Amoskeag Bank Shares, Inc.*, 24

F.3d 357, 361 (1st Cir. 1994) (internal punctuation and citations omitted).  No such facts are

alleged here.[23]

---

[22]     Ms. Smith alternatively argues that MFS acted recklessly  Cmplt. ¶¶ 13, 101.  Recklessness requires pleading specific facts showing "that defendants had full knowledge of the dangers of their course of action and chose not to disclose those dangers to investors." *Maldonado v. Dominguez*, 137 F.3d 1, 9 n.4 (1st Cir. 1998).  No such facts are alleged here.

[23]     Ms. Smith suggests that MFS "designed" or "depict[ed]" information in the MFS Fund prospectuses in order to "mislead" investors.  Cmplt. ¶¶ 38-40, 45, 47, 58.  For example, the complaint alleges that "MFS *designed* [the] financial highlights tables to showcase class A shares as the share class with the highest past returns …. and, therefore, as the best performing share."  Cmplt. ¶ 45 (emphasis added).  As the SEC regulations contained in Form N-1A demonstrate, however, MFS did not "design" the

The complaint does not allege a single particularized fact suggesting that anyone at MFS intended that any of the Funds' prospectuses be false and misleading, that anyone at MFS intended to defraud investors, or that anyone at MFS purportedly knew that there was something inaccurate or misleading about information in the prospectuses.  Instead, Ms. Smith merely alleges, in conclusory fashion, that MFS engaged in a "centralized, directed, and concerted scheme to defraud investors while reaping excess profits." Cmplt. ¶¶ 3, 36.  Such conclusory allegations do not suffice.  *Ezra Charitable Trust v. Tyco Int'l, Ltd.*, 466 F.3d 1, 10 (1st Cir. 2006); *see In re Boston Tech., Inc. Sec. Litig.*, 8 F. Supp. 2d 43, 57-58 (D. Mass. 1998).

### 1.    Motive and opportunity, without more, do not support a strong inference of scienter.

Lacking any facts to indicate "particular 'times, dates, places or other details of the alleged fraudulent involvement of the actors,'" *Serabian*, 24 F.3d at 361, the complaint relies entirely upon the theory that MFS possessed a motive to induce investors into purchasing class A shares in order to "reap excess profits through the fees charged to A share investors." *See, e.g.*, Cmplt. ¶ 5.  However, in the First Circuit, allegations of motive and opportunity, without additional factual support, are insufficient.  *Aldridge*, 284 F.3d at 82.  As this Court recently explained, "simply establishing a motivation to make false and misleading statements, regardless of the strength of the inferences to be drawn, is not enough to establish scienter." *In re Credit Suisse First Boston Corp.*, No. 02-12056-GAO, 2005 WL 852455, at *8 (D. Mass. Mar. 31, 2005) (O'Toole, J.); *accord Greebel*, 194. F.3d at 197 (same).

Ms. Smith's complaint does not contain the type of additional factual support that, when coupled with motive and opportunity allegations, courts have required to plead a strong inference

---

financial highlights table, or any other component of the prospectuses, identified as misleading by the plaintiffs.  *See* Section II.B, *supra.*  The design of information to be presented was the handiwork of the SEC.

of scienter.  For example, in *In re Cabletron Systems, Inc.*, 311 F.3d 11 (1st Cir. 2002), the court

held that plaintiffs had adequately pleaded scienter where they alleged motive and opportunity

combined with specific facts suggesting that the defendants received information contradicting

the company's public statements.  *Id.* at 39-40.[24]  No such facts have been pleaded here.

Indeed, Ms. Smith's allegations "set[] out nothing more than an ordinary business

motive."  *Key Equity Investors, Inc. v. Sel-Lab Mktg, Inc.*, 246 Fed. App'x 780, 786 n.10 (3d Cir.

Sept. 6, 2007).  As one court recently explained, "while a desire to profit may motivate a person

to commit fraud, allegations that defendants 'stand[] to gain economically from fraud do not

satisfy the heightened pleading requirements.'"  *Castillo v. Dean Witter Discover & Co.*, No. 97-

1272 (RPP), 1998 WL 342050, at *10 (S.D.N.Y. June 25, 1998).  "Ordinary" profit motives

insufficient to plead scienter include allegations that defendants charged excess or improper fees

to mutual fund shareholders.  For example, in *Nenni*, the court observed that the financial benefit

motive, without more, could not sustain the plaintiff's Section 10(b) claims relating to

defendants' alleged concealment of mutual fund CDSC fees.  1999 WL 34801540, at *3.[25]  Ms.

Smith's claims that MFS was motivated to profit from sales of A shares are similarly deficient.[26]

---

[24]    Similarly, in *Geffon v. Micrion Corp.*, 249 F.3d 29 (1st Cir. 2001), the court stated that the plaintiff must plead "additional misconduct" rather than merely motive and opportunity, citing examples such as insider trading, divergence between internal reports and public statements, and bribery.  *Id.* at 36.

[25]    *Accord In re Eaton Vance Corp. Sec. Litig.*, 206 F. Supp. 2d 142, 153-54 (D. Mass. 2002) (allegation that defendants received management fees tied to the value of the mutual fund's assets constituted a "generalized business motive … that would apply in nearly every business" insufficient to establish a strong inference of scienter).

[26]    Ms. Smith's generalized allegations regarding conflicts of interest are likewise insufficient absent additional factual support.  *See* Cmplt. ¶¶ 61-71.  In *In re Credit Suisse First Boston Corp.*, the court commented that "while the plaintiffs' allegations regarding the obvious conflicts of interest … may be enough to turn the stomach of an ethically sensitive observer, they are insufficient, on their own, to support a fraud pleading …. Such allegations are tantamount to pleading conclusory statements regarding motive and opportunity…."  431 F.3d 36, 49-50 (1st Cir. 2005) (internal citations omitted); *accord Credit Suisse*, 2005 WL 852455, at *6 ("Generalized allegations about conflicts of interest … are not  sufficient, standing alone, to satisfy the particularity requirements") (internal punctuation and citations omitted).  In *Castillo*, the court held that the plaintiff's allegations that conflicts of interest created by incentives encouraging brokers to sell proprietary funds to investors did not plead scienter. 1998 WL 342050, at *10-11; *see also Shivangi v. Dean Witter Reynolds, Inc.*, 637 F. Supp. 1001, 1005 (S.D. Miss. 1986) (same).

### 2.   The "Additional Scienter Allegations" do not plead scienter.

A small hodgepodge of generalized allegations entitled, "Additional Scienter

Allegations," Cmplt. ¶¶ 79-86, offers no additional support for a strong inference of scienter.

These vague allegations have little if any relevance—and do not purport to be particularized to—

the asserted fraud.  Rather, they relate to public information that Ms. Smith alleges reflects

"MFS's demonstrable knowledge of actual investor behavior" with respect to "redemption

rates."  Cmplt. ¶¶ 79, 84.  The complaint fails to explain what publicized "redemption" patterns

of the "typical" mutual fund investor have to do with the question of whether MFS fraudulently

misrepresented information in Ms. Smith's prospectuses about the relative costs or performance

of class A, B and C shares.[27]  Even if these allegations did have some attenuated connection to

the complaint's other allegations, they would fall well short of raising a strong inference that

MFS intended to defraud MFS Fund investors.[28]

### 3.   Allegations of motive and opportunity are outweighed by strong, opposing inferences of non-fraudulent intent.

A strong inference "must be more than merely 'reasonable' or 'permissible,'" it must be

"*cogent* and at least as *compelling* as any opposing inference of nonfraudulent intent."  *Tellabs,*

*Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007) (emphases added).  As the

Court of Appeals for the Fourth Circuit recently explained, "when the facts as a whole more

plausibly suggest that the defendant acted innocently—or even negligently—rather than with

intent or severe recklessness, the action must be dismissed."  *Cozzarrelli*, 549 F.3d at 624.

The omissions of which Ms. Smith complains do not raise a strong inference of scienter

---

[27]   In any case, the alleged "redemption" data do not purport to reflect the behavior of the putative class of investors—purchasers of A shares in amounts less than $50,000 with a 5.75% load—nor do they even purport to reflect the behavior investors in A shares or *any* particular share class.  Cmplt. ¶¶ 81-83.  Instead, Ms. Smith alleges that the data reflect "redemption" statistics by individual MFS Fund, not by share class.  Cmplt. ¶¶ 81-83.

[28]   Ms. Smith never defines "long-term" in the complaint and fails to reference any language in the MFS Fund prospectuses, or elsewhere, that single out class A shares as the most appropriate "long-term" investment.

in light of the absence of any SEC requirement that the prospectuses disclose the allegedly

omitted information.  As the court reasoned in *Morgan Stanley & Van Kampen*, "It cannot be

conscious misbehavior or recklessness for a defendant to fail to disclose in a prospectus

information that is neither material nor required to be disclosed under applicable SEC

regulations."  2006 WL 1008138, at *11 (internal punctuation and citations omitted).  And in

*Benzon*, the Sixth Circuit rejected the notion that there is anything fraudulent about offering

share classes that are "less valuable" than others.  420 F.3d at 609, 611.  It stated:

> Plaintiffs' disclosure claim is, effectively, that Defendants should have informed
> investors that class B shares were less valuable than other class shares….
> Plaintiffs' argument is unavailing….  Plaintiffs' complaint does not contend that
> Class B shares are worthless; it just asserts that other securities offered by
> Defendants are worth more.  The fact that Defendants have offered certain
> securities which are more valuable to investors than other securities it offers does
> not constitute fraud … particularly given that Defendants' prospectuses disclose
> the information necessary to determine the relative value of the different class
> shares.

*Id.*  Ms. Smith's allegations here about the purported inferiority of class A shares, relative

to class B and C shares, are equally unavailing and insufficient to plead the requisite

strong inference of scienter.[29]

Further, Ms. Smith's entire theory of MFS's "motive" is based upon the premise that

MFS earns "far higher profits" on sales of class A shares because broker commissions are paid

by the investor, whereas MFS pays broker-dealers their commissions for B and C share sales

"directly out of MFS's own resources."  Cmplt. ¶¶ 32-33.  Ms. Smith's profit motive allegations

focus entirely upon the initial investment transaction (Cmplt. ¶¶ 32, 34, 65-66, 69) and are

contradicted by disclosures in the prospectuses' SAIs that specifically describe MFS's receipt of

---

[29]     Indeed, the suggestion that MFS acted to mislead investors about the relative merits of class A shares is
particularly implausible when one considers why MFS would bother to offer classes B and C if it had no financial
incentive to sell them.  In fact, the MFS Fund prospectus contained accurate descriptions of all share classes'
expenses, and the prospectuses offered to investors diversity of choice among share classes.

compensation from the funds that offsets its payments to intermediaries upon the sales of class B

and C shares.  COF SAI 4/1/05, at II-6 (Ex. I).[30]

Finally, while Ms. Smith has alleged that certain "performance tables" failed to reflect

the class B to class A share conversion after eight years of investment, Ms. Smith has failed to

allege facts to show that the alleged error is anything more than a mistake.  Mistake is not fraud.

*See In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 246 (8th Cir. 2008).  No particularized facts

in the complaint demonstrate that anyone at MFS intended to mislead investors when creating

the performance table.  The very fact that the prospectus elsewhere explicitly describes the

conversion suggests that any omission of the effect of the conversion from the calculations

underlying the performance table was unintentional.  TRF Pros. 2/1/05, at 12, 22 (Ex. B); COF

Pros. 4/1/05, at 9, 19-20 (Ex. C).  Given that, as explained previously, the computational error

was not material, *see* II.C.3 *supra*, it is useful to consider this Court's description of the "link"

between scienter and materiality:

> The more material the omission, the more it might be thought to have been
> purposefully motivated by an intent to deceive.  Conversely, the omission of a
> relatively immaterial fact might well have been done precisely because it was
> immaterial.

*Parametric Tech. Corp.*, 300 F. Supp. 2d at 216.

### E.        The Complaint Fails To Plead Reliance.

To assert a claim under Section 10(b), plaintiff must plead reliance.  *Gross v. Summa

Four, Inc.*, 93 F.3d 987, 992 (1st Cir. 1996); *see also Garvey v. Arkoosh*, 354 F. Supp. 2d 73, 80

(D. Mass. 2005).  Ms. Smith's Section 10(b) claim fails because she does not plead with any

level of  particularity that she relied on—or even read—the relevant prospectuses before

purchasing the two funds' class A shares.

---

[30]    The Total Return Fund SAI has the same disclosure.

To allege reliance—seen as establishing "transaction causation"—Ms. Smith must plead that "*but for* the claimed misrepresentations or omissions," she would not have purchased class A shares in the MFS Funds. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (emphasis added); *see In re Alkermes Sec. Litig.*, No. 03-12091-RCL, 2005 WL 2848341, at *11 (D. Mass. Oct. 6, 2005).  Although courts recognize a presumption of reliance in some types of omissions cases under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), there is no presumption of reliance where, as here, the complaint alleges that affirmative statements were rendered misleading by omissions.  *Abelson v. Strong*, 644 F. Supp. 524, 528 (D. Mass. 1986).  The presumption instead applies only "where the defendant has failed to disclose any information whatsoever relating to material facts about which the defendant has a duty to the plaintiff to disclose."  *Gorsey v. I.M. Simon & Co.*, No. 86-1875-Z, 1990 WL 61966, at *3 (D. Mass. Mar. 6, 1990) (internal punctuation and citation omitted).  Moreover, no presumption applies where, as here, the complaint alleges an affirmative misrepresentation as well as an omission.[31]

Where, as here, the allegedly misleading statements are contained in a prospectus, in order to meet the "specificity requirements" of Rule 9(b), Ms. Smith must plead what specific statements she relied upon, as well as the fact she relied upon the prospectus.  *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 321-22 (8th Cir. 1997).  In *NationsMart Corp.*, the appellate court affirmed the lower court's dismissal of the plaintiffs' Section 10(b) claims for failure to adequately plead reliance where the complaint "did not claim that they ever read the Prospectus

---

[31]   In the mutual fund context, a plaintiff cannot plead reliance by recourse to the integrity of the market price of securities purchased.  Open-end mutual fund shares are not bought and sold on a market but are priced based upon the value of the fund's underlying portfolio securities.  *In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1174, 1188 (N.D. Cal. 2004); *see also Clark v. Nevis Capital Mgmt. Inc.*, No. 04-2702 (RWS), 2005 WL 488641, at *18 (S.D.N.Y. Mar. 2, 2005).  Accordingly, Ms. Smith must establish actual reliance on the alleged omissions or misrepresentations.

or specify which allegedly fraudulent statements they relied on." *Id.* at 322; *accord Van Wagoner*, 382 F. Supp. 2d at 1187-88.  The court rejected the plaintiffs' conclusory allegation that "[i]n reliance upon the defendants' misrepresentations, … plaintiffs and the other Class members were induced to and did obtain NationsMart securities." *NationsMart Corp.*, 130 F.3d at 321-22.  Neither boilerplate allegations of reliance nor post hoc suggestions about what plaintiff might have concluded had they read any particular document will suffice.  *See id.*

Completely absent from Ms. Smith's complaint is any allegation that she ever read her MFS Funds' prospectuses—let alone relied on any omission or misrepresentation in them—at the time of her investment.  Instead, Ms. Smith employs conclusory allegations rejected by the court in *NationsMart*.  For example, she alleges that "relying directly or indirectly on the incomplete and misleading disclosures that omitted material information from the MFS Fund prospectuses,… plaintiff and the Class members purchased the wrong class."  Cmplt. ¶ 106.  Ms. Smith's allegations about the impact of the alleged fraud on a "rational investor" (Cmplt. ¶ 4), "Class members" (Cmplt. ¶¶ 36, 55, 105), or a "reasonable Class member[]" (Cmplt. ¶ 93) simply do not suffice to plead with particularity Ms. Smith's own reliance.

### F.     The Complaint Fails To Plead Loss Causation.

To state a claim for federal securities fraud, a plaintiff must show "loss causation"—that is, "a causal connection between the material misrepresentation [or omission] and the loss." *Dura Pharms., Inc.*, 544 U.S. at 342; *see* 15 U.S.C. § 78u-4(b)(4).  Because Ms. Smith fails to allege loss causation, her complaint must be dismissed.  *See, e.g.*, *Dura Pharms., Inc.*, 544 U.S. at 347-48; *In re Polaroid Corp. Sec. Litig.*, 134 F. Supp. 2d 176, 188-89 (D. Mass. 2001) (dismissing complaint for failure to plead loss causation).

### 1.    The complaint fails to plead loss causation because Ms. Smith's alleged loss is based only on comparative hypothetical returns.

Ms. Smith claims that she suffered losses because the Defendants' alleged omissions and misrepresentations caused her to "pay unnecessary fees and expenses" and thereby "realize lower returns" than investors in classes B and C shares.  Cmplt. ¶ 99.[32]  Ms. Smith does not allege that she paid any fees and expenses other than those that her prospectus explicitly disclosed.  As a matter of law and common sense, this does not constitute loss causation.  Rather, the "loss" that Ms. Smith complains of is the difference in investment returns between her investment in class A shares and a hypothetical investment in class B or C shares.  According to Ms. Smith, "class B and/or class C shares *would have been* [her] best investment decision for any holding period." Cmplt. ¶ 99 (emphasis added).

This type of loss is not actionable under the securities laws.  It is, under Section 10(b), "long-established law that a shareholder cannot recover for 'damages' based on hypothetical investments he did not make."  *Morgan Stanley & Van Kampen*, 2006 WL 1008138, at *10 (citing *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 754 (1975)).  The securities laws do not permit investors to plead loss causation based on what "*would* have been" their best investment decision, as Ms. Smith alleges here.  *See* Cmplt. ¶ 99 (emphasis added); *Salomon Smith Barney*, 441 F. Supp. 2d 579.

In *Salomon Smith Barney*, the plaintiffs alleged that the defendants fraudulently incentivized brokers to steer investors into class B shares of proprietary mutual funds, in which they paid higher fees relative to other funds.  441 F. Supp. 2d at 583-84.  The complaint stated that, "[b]y investing in [the] Funds, Plaintiffs received a return on their investment that was

---

[32]    Ms. Smith makes the conclusory allegation that, as a result of MFS's "improper" sales of A shares, Ms. Smith and the putative class "suffered decreased account values of at least $450 million" and MFS "reaped at least $250 million in excess profits."  Cmplt. ¶ 5.  Ms. Smith provides no explanation of where these figures came from.

31

substantially less than the return on investment that they would have received" had they invested the same amount in another security. *Id.* at 589. Ms. Smith makes essentially the same claim here. *See* Cmplt. ¶ 99. But the claim will not wash. The court in *Salomon Smith Barney* explained that the theory that plaintiffs "forewent better investment opportunities" did not plead loss causation because the loss alleged was "based on hypothetical investments [they] did not make." 441 F. Supp. 2d at 589; *see also Morgan Stanley & Van Kampen*, 2006 WL 1008138, at *10 (dismissing complaint and rejecting theory of loss causation that misrepresentations caused plaintiffs to realize a substantially lower return on their investment than they would have received on an alternative investment).

## 2.     Speculative losses are not recoverable.

Ms. Smith got exactly what she bargained for—the fees she has paid for her class A shares are precisely what her prospectuses disclosed. Any "loss" relating to the "long-term" performance of class A shares relative to other share classes has not yet been experienced and is still speculative. The mere possibility that alleged omissions about "long-term" performance (Cmplt. ¶ 1) "*might* mean a later loss" does not support loss causation. *Dura Pharms., Inc.*, 544 U.S. at 342-43. The future losses Ms. Smith envisions may never come to pass—for example, if Ms. Smith does not hold her shares for ten years. Section 10(b) "only provides for recovery of actual damages, and not for loss of speculative profits." *Wolf v. Frank*, 477 F.2d 467, 478 (5th Cir. 1973) (citation omitted).

Ms. Smith's losses are speculative for the additional reason that they are based on data in the prospectuses' expense example that assume that the "fund's operating expenses remain the same." TRF Pros. 2/1/05, at 12 (Ex. B); COF Pros. 4/1/05, at 8 (Ex. C); Form N-1A, Item 3, Instr. 4(a) (Ex. D). The prospectuses do not, however, guarantee investors that the Funds' fee and expense structures will remain the same for any holding period. The fees and expenses of

the different classes may (and, in fact sometimes do) change to make a different share class more

or less advantageous.  Ms. Smith cannot allege loss causation for "latent faults that never

manifest[] themselves."  *Polaroid Corp.*, 134 F. Supp. 2d at 188.

## III.   THE COMPLAINT IS TIME-BARRED.

Ms. Smith purchased her shares on September 1, 2005, and she filed her complaint more

than two years later, on July 28, 2008.  A claim under Section 10(b) and Rule 10b-5 must be

brought within two years of the plaintiff's discovery of the alleged violation.  28 U.S.C. § 1658.

"Discovery" is triggered by either actual knowledge or inquiry notice.  *Shah v. Meeker*, 435 F.3d

244, 248-49 (2d Cir. 2006).  Inquiry notice is an objective test of whether "a reasonable investor

of ordinary intelligence would have discovered the existence of fraud" through exercise of due

diligence.  *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993).

Assuming for the sake of argument that she did have a claim, Ms. Smith's complaint

would be time-barred because she had either actual knowledge or was on inquiry notice of her

claims at the time of her fund purchases.  The prospectuses provided the very information that

would have enabled a reasonable investor to learn the information Ms. Smith alleges was

misstated or omitted.  No new information has come to light since then.  A "plaintiff[] cannot

avoid the statute of limitations by possessing, but failing to read, the documents that would put

[her] on inquiry notice."  *DeBruyne v. Equitable Life Assurance Soc'y of the U.S.*, 920 F.2d 457,

466 n.18 (7th Cir. 1990).

### A.     Ms. Smith Was On Inquiry Notice Of The Relative Account Values And Total Returns Of Class A Shares Compared With B And C Shares.

Ms. Smith could have determined which share class was best for her using the

information in her prospectuses.  Several courts have concluded that, under these circumstances,

plaintiffs are on inquiry notice at the time they purchase their shares.  In *DeBenedictis v. Merrill*

*Lynch & Co.,* 492 F.3d 209 (3d Cir. 2007), the Third Circuit Court of Appeals considered

whether a mutual fund prospectus was fraudulent when it failed to disclose that class B shares

were never a "rational choice" for investments over $100,000.  492 F.3d at 210.  The court held

that the plaintiffs were on inquiry notice of the relative merits of the share classes because fees

and expenses were disclosed in the prospectus and SAI.  *Id.* at 217.  As a result, the court held,

"investors could calculate on their own whether one class of shares is more economically

attractive than another."  *Id.* at  216-17.  In *Fitzgerald v. Citigroup Inc.*, the court tackled the

same issue and reached the same conclusion.  No. 03-4305-DAB, 2007 WL 582965, at *1, 7

(S.D.N.Y. Feb. 23, 2007).

As in *DeBenedictis* and *Fitzgerald*, the issue here is whether accurate information

required by SEC regulation to be included in mutual fund prospectuses can be the basis of a

claim that an investor was defrauded into buying a specific class of fund.  *See* Cmplt. ¶ 3.  And

as in those cases, Ms. Smith's prospectuses disclosed the applicable fees and expenses in the fee

table.  TRF Pros. 2/1/05, at 10 (Ex. B); COF Pros. 4/1/05, at 7 (Ex. C); *see* Cmplt. ¶¶ 27-31

(explaining the applicable fees and expenses and where such information can be found in a

prospectus).  Ms. Smith alleges that the prospectuses should have disclosed relative account

values.  Cmplt. ¶¶ 49-51.  However, the three examples of account values asserted in the

complaint to have been fraudulently omitted could all be calculated solely using information in

the prospectuses.  Cmplt. ¶ 51, Cmplt. Exs. 3-4.  The allegations in the complaint are based on

information that was equally available to Ms. Smith in 2005 as it is today.

**B.     Ms. Smith Had Actual Knowledge, Or, At A Minimum, Inquiry Notice, Of
        The Alleged Broker Conflicts Of Interest.**

Assuming that Ms. Smith read her prospectuses, she had actual knowledge of the broker-

dealer's conflict of interest of which she complains.  The "Financial Intermediary Support

34

Payments" section of the prospectuses expressly disclosed that a broker "may have a financial incentive to recommend a … particular share class."  TRF Pros. 2/1/05, at 25 (Ex. B); COF Pros. 4/1/05, at 23 (Ex. C).

At a minimum, her prospectuses put Ms. Smith on inquiry notice.  In *Benedictis*, for example, the Third Circuit held that inquiry notice was triggered by the prospectus' statement that brokers may receive "different compensation" depending on the share class.  *DeBenedictis*, 492 F.3d at 217.  The district court in *Fitzgerald* reached the same conclusion.  *Fitzgerald*, 2007 WL 582965 at *7.[33]

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed.

---

[33]   In fact, Ms. Smith's MFS Fund prospectuses also directed her to the accompanying SAI, incorporated by reference, for additional information about financial intermediary compensation.  The SAI recommended, "You should ask your financial intermediary for information about any payments it receives from MFD or the Funds and any services it provides, as well as about fees and/or commissions it charges."  COF SAI 4/1/05, at II.B-3 (Ex. I).

Respectfully submitted,

MASSACHUSETTS FINANCIAL
SERVICES COMPANY and MFS FUND
DISTRIBUTORS, INC.

By their attorneys,


/s/ James S. Dittmar
James S. Dittmar BBO # 126320
Katherine G. McKenney BBO # 660621
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA  02109
Telephone:  (617) 570-1000
Facsimile:  (617) 227-8591
jdittmar@goodwinprocter.com
kmckenney@goodwinprocter.com

Michael K. Isenman (*pro hac vice*)
GOODWIN PROCTER LLP
901 New York Avenue, NW
Washington, DC  20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444
misenman@goodwinprocter.com

Dated: February 12, 2009

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that this document and the appendix of unreported cases filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 12, 2009.


           /s/ James S. Dittmar